BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**KATHERINE C. DE VILLIERS**
Katie.de.Villiers@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2902
Telephone:    503-727-1000
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND  DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No.  3:18-cv-01589-MA** |
| **v.** | **COMPLAINT *IN REM* FOR FORFEITURE** |
| **THREE (3) REAL PROPERTIES (DEFENDANT REAL PROPERTIES), LOCATED IN PORTLAND, OREGON AND LAKE OSWEGO, OREGON, WITHIN THE STATE AND DISTRICT OF OREGON, WITH BUILDINGS APPURTENANCES AND IMPROVEMENTS, *in rem*,** | |
| **Defendants.** | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the

District of Oregon, and Katherine C. de Villiers, Assistant United States Attorney, for its

Complaint *in rem* for forfeiture, alleges:

**Complaint *in rem* for Forfeiture**                                            **Page 1**

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendants, *in rem*, consist of three (3) pieces of real property further described as:

    **a. 19 Monticello Drive, Lake Oswego, Oregon:** more particularly described as 1237 Mountain Park #2 LT 19, BLK 1. It is located within the city of Lake Oswego, county of Clackamas, state of Oregon;

    **b. 5635 and 5639 SE 84th Avenue, Portland, Oregon:** more particularly described as Evelyn, Block 4, Lot 6. It is located within the city of Portland, county of Multnomah, state of Oregon. The two street addresses make up a duplex unit and are connected and therefore have the same legal property description; and

    **c. 3826 SE 50th Avenue, Portland, Oregon:** more particularly described as 1S2E07CA 03400 WASHINGTON ADD, LOT A TL 3400. It is located within the city of Portland, county of Multnomah, state of Oregon,

(hereinafter, DEFENDANT REAL PROPERTIES).

DEFENDANT REAL PROPERTIES are in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

DEFENDANT REAL PROPERTIES, as described above, represent properties used or intended to be used to facilitate the manufacture of an illegal substance (marijuana) with intent to distribute, in violation of the Uniform Controlled Substances Act, Title 21 United States Code, Sections 841, 846, and 856, and are forfeitable to the United States pursuant to the provisions of Title 21, United States Code, Section 881(a)(7), as more particularly set forth in the Declaration of Special Agent Cameron Wall, Internal Revenue Service-Criminal Investigation, marked as Exhibit A, attached and fully incorporated herein by this reference.

**Complaint *in rem* for Forfeiture**                                    **Page 2**

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of DEFENDANT REAL PROPERTIES, *in rem*; that due notice be given to all interested persons to appear and show cause why forfeiture of these DEFENDANT REAL PROPERTIES, *in rem*, should not be decreed; that due proceedings be had thereon; that these DEFENDANT REAL PROPERTIES be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: August 28, 2018.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney


*s/ Katie de Villiers*
KATHERINE C. DE VILLIERS
Assistant United States Attorney

**VERIFICATION**

I, CAMERON WALL declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Internal Revenue Service-Criminal Investigations, and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

<u>*s/ Cameron Wall*</u>
CAMERON WALL
Special Agent
Internal Revenue Service-Criminal Investigations

## DECLARATION OF CAMERON WALL

I, Special Agent Cameron Wall, do hereby declare:

### <u>Purpose of the Declaration</u>

1. This declaration is being submitted in support of an application for the complaint *in rem* for forfeiture of the following properties:

   a. **19 Monticello Drive, Lake Oswego, Oregon, 97035 (hereafter referred to as "the 19 Monticello Dr. Property");**

   b. **5635 and 5639 SE 84th Avenue, Portland, Oregon, 97266 (The two street addresses make up a duplex unit, which are connected.  The two 84th Ave. addresses will be collectively referred to as "the 84th Ave. Property"); and,**

   c. **3826 SE 50th Avenue, Portland, Oregon, 97206 (hereafter referred to as "the 50th Ave. Property").**

2. The properties will be collectively referred to as "**Defendant Real Properties**" within this declaration.

### <u>Agent Background</u>

3. I am a Special Agent with the Internal Revenue Service – Criminal Investigation and have been since January 2010. I am currently assigned to the Portland, Oregon Post of Duty in the Seattle Field Office.   I have successfully completed the 11-week Criminal Investigator Training Course at the Federal Law Enforcement Training Center and the 16-week Special Agent Basic Training course put on by the Internal Revenue Service.   During this time, I have either conducted or been involved in investigations concerning Title 26 (Income Tax), Title 18 (Conspiracy and Money Laundering), Title 31 (Bank Secrecy Act), and Title

**Declaration of Cameron Wall**

21 (Controlled Substances Act) violations by individuals involved in both legal and illegal occupations.

4. I have written and directly been involved in writing no fewer than twenty search and seizure warrants and have participated in the service of no fewer than twenty federal search warrants involving criminal income tax charges, money laundering, drug violations, and other criminal activities during which evidence of criminal violations was seized.

5. In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe that the **Defendant Real Properties** were used to facilitate the manufacture of an illegal substance (marijuana) with intent to distribute, in violation of the Uniform Controlled Substances Act, Title 21 United States Code §§ 841, 846, and 856, and are therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(7).

6. The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This declaration is for the limited purpose of establishing probable cause.   Therefore, I have not set forth each fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause.

### Legal Description and Current Valuation of Defendant Real Properties

7. 19 Monticello Drive, Lake Oswego, Oregon, 97035, is more particularly described as 1237 Mountain Park #2 LT 19, BLK 1. It is located within the city of Lake Oswego, county of Clackamas, state of Oregon. The current title holders and owners of record are Chung Tung LIM (C. LIM) and Alice L. LIM (A. LIM).

**Declaration of Cameron Wall**

EXHIBIT A    PAGE 2
Complaint *In Rem*
FOR FORFEITURE

8. According to property records I reviewed, the current appraisal of the 19 Monticello Drive Property is approximately $713,000. The initial lien on the property was approximately $360,400, but according to bank records I reviewed, A. LIM and/or C. LIM have made approximately $114,530 in mortgage payments on the 19 Monticello Drive Property, which would substantially reduce the amount of the lien on the property.

9. **5635 SE 84th Avenue, Portland, Oregon, 97266**, is more particularly described as Evelyn, Block 4, Lot 6. It is located within the city of Portland, county of Multnomah, state of Oregon. The current title holder and owner of record is Damon HUANG (HUANG). **5635 and 5639** are a duplex unit and are connected (same legal property description).

10. **5639 SE 84th Avenue, Portland, Oregon, 97266** is more particularly described as Evelyn, Block 4, Lot 6. It is located within the city of Portland, county of Multnomah, state of Oregon. The current title holder and owner of record is believed to be HUANG.   Again, **5635 and 5639** are a duplex unit and are connected (same legal property description).

11. According to property records I reviewed, the current appraisal of the 84th Avenue Property is $450,000. There are two liens on the property: approximately $6,906 in delinquent property taxes, and $300,000 which is a seller-financed loan between A. LIM (the previous owner and financer) and HUANG (the current owner of the property and the debtor).

12. **3826 SE 50th Avenue, Portland, Oregon, 97206**, is more particularly described as 1S2E07CA 03400 WASHINGTON ADD, LOT A TL 3400. Property 4 is located within the city of Portland, county of Multnomah, state of Oregon. The title holder and owner of record is A. LIM.

**Declaration of Cameron Wall**

13. According to property records I reviewed, the current appraisal for the 50th Avenue Property is approximately $549,000. There are no liens on the property.

**Information Related to Marijuana Cultivation in Oregon**

14. Based on my training and experience, I know that subjects involved in the illegal trafficking of marijuana commonly use their status in the Oregon Medical Marijuana Program (OMMP) or the Oregon Liquor Control Commission (OLCC) regulated market to hide their illegal activity and avoid criminal prosecution.

15. I know Oregon is a source for black-market marijuana and marijuana products diverted to other states. Marijuana in Oregon has a high potency with relatively low prices due to its regulated status, large supply, optimal outdoor growing conditions and the amount of producers growing both legally and illegally. Oregon marijuana purchased in state can double or triple in price when taken out of state creating the opportunity for large profit margins.

16. I have been involved in the investigation of numerous marijuana-related growing and smuggling schemes originating from illegal cultivation of marijuana within the state of Oregon and being diverted to other states including Texas, Louisiana, Florida, Georgia, North Carolina, and Virginia. I have learned it is common for those engaged in illegal marijuana cultivation to convert personal residences into large-scale marijuana cultivation sites for several reasons, including to attempt to elude detection by law enforcement by being inside a residential community and that the fair market rental of a personal residence is significantly cheaper and more readily accessible than legitimate marijuana cultivation sites.

**Declaration of Cameron Wall**                    EXHIBIT A    PAGE 4
                                                   Complaint *In Rem*
                                                   FOR FORFEITURE

17. During these investigations I have participated in and written search warrants for premises used to grow marijuana and premises not used to grow illegal marijuana. I have learned that there is a direct relationship between high power consumption at premises and the illegal cultivation of marijuana through these investigations and analysis of power consumption records.

## Identification of a Marijuana Cultivation Scheme

18. Based on information gained through various investigative techniques, including but not limited to, interviews, surveillance, subpoenas, prior drug-related investigations conducted by Investigators, fixed video surveillance, search warrants, analysis of open-source information, and marijuana seizures, I believe that there are members of multiple Drug Trafficking Organizations (DTOs) working together to cultivate large amounts of marijuana, both in the **Defendant Real Properties** and elsewhere, that is then shipped or otherwise transported to various locations outside of the District of Oregon for distribution.

## Background of the Investigation

19. In June 2017, Lake Oswego Police Department (LOPD) detectives informed Drug Enforcement Administration (DEA) investigators of a suspected large-scale indoor marijuana growing operation located at a property at 19 Monticello Dr., Lake Oswego, Oregon, which had been operating since at least April 2017. Shortly thereafter, Drug Enforcement Administration Portland District Office Group D-51 (DEA D-51), with the assistance of Homeland Security Investigations (HSI), Tigard Police Department (TPD), the Federal Bureau of Investigation (FBI), the Port of Portland Police (PPP), Multnomah County Sheriff's Office (MCSO), LOPD, and the Internal Revenue Service-Criminal

**Declaration of Cameron Wall**

EXHIBIT A    PAGE 5
Complaint *In Rem*
FOR FORFEITURE

Investigation (IRS-CI) (collectively referred to as "Investigators" within this declaration) began conducting a proactive investigation involving the 19 Monticello Dr. property. Throughout the investigation, investigators identified several residences which were suspected of being operated as large-scale indoor marijuana cultivation operations. Additionally, the investigation revealed that at least a portion of the marijuana grown at the **Defendant Real Properties** was being sold, transported, and distributed outside the District of Oregon.

## Identification of 19 Monticello Drive Property as a Marijuana Growing Operation

20. Investigators reviewed Bank of America documents pursuant to subpoena for an account ending in 5884 and discovered this account was used to make payments on a Portland General Electric (PGE) bill for the 19 Monticello Dr. Property in October and December 2017. Cash deposits funded the payments to PGE.

21. Investigators reviewed power consumption records from PGE pursuant to subpoena for the 19 Monticello Dr. Property for the period January 2017 to January 2018. The monthly power consumption ranged from a low of 2,502 kilowatt hours (KWH) to a high of 22,174 KWH. Information from PGE showed that three homes near the 19 Monticello Dr. Property used an average of 1,058 KWH in January 2018, while 19 Monticello Dr. used 16,374 KWH. I know based on my training and experience that abnormally high power usage is an indication of marijuana production.

## February 13, 2018 Search Warrants

**Declaration of Cameron Wall**                                        EXHIBIT A    PAGE 6
                                                                            Complaint *In Rem*
                                                                            FOR FORFEITURE

22. On February 13, 2018, investigators executed federal search and seizure warrants at six locations in Oregon and Washington, including 19 Monticello Dr., Lake Oswego, Oregon 9015 SE Victor St., Portland, Oregon.

23. In summary, investigators seized over 4,000 live marijuana plants and over 40 pounds of processed marijuana from five large-scale residential marijuana growing operations. Investigators seized 795 marijuana plants and approximately 15 pounds of processed marijuana from the 19 Monticello Drive Property and 444 marijuana plants from 9105 Victor St.   None of the Properties, including the 19 Monticello Dr. Property and the 9015 Victor St. Property, were registered with Oregon's or Washington's medical or recreational marijuana programs to grow marijuana legally under state laws.

24. During the execution of the search warrant, investigators seized several documents and receipts. Some the receipts, including receipts for marijuana growing supplies and materials, had "19" written on them. Similar documents had "90" written on them. Several of the documents and receipts also had "Mr. Lim" written on them, with an amount of money written next to it. For example, one document labeled "90th" at the top had "Mr. Lim owe [] $500 loan" handwritten on it. Another document had "Owe Mr. Lim (9733)" handwritten on it. Another document had "1-19-17 from Mr. Lim $6000 to (Unknown Chinese characters) first & last & deposit" on it and "1-19-17 from Mr. Lim $9000 to [] to start" written on it.

25. Based on the findings, I believe that the documents with "19" written on them were for expenses and purchases related to the marijuana growing operation found at the 19 Monticello Dr. Property, and that the documents with "90" on them refer to the marijuana

**Declaration of Cameron Wall**                                        EXHIBIT A    PAGE 7
                                                                            Complaint *In Rem*
                                                                         FOR FORFEITURE

growing operation at 9015 Victor St. Property (which is just off the intersection of SE 90th Ave and Victor Street). I also believe that "Mr. Lim" is C. LIM, and the amount of money associated to "Mr. Lim" on the handwritten documents is related to money that C. LIM invested into marijuana growing operations at the 19 Monticello Dr. Property and the 9015 Victor Street Property.

### Identification of the 84th Avenue Property and the SE 50th Avenue Property as Marijuana Growing Operations

26. Investigators identified two additional marijuana growing operations: the SE 84th Ave. Property and the 50th Ave. Property.

27. On March 12, 2018, investigators performed surveillance in the area of 5635 SE 84th Ave., and observed the property to be one part of a duplex unit with 5639 SE 84th Ave. Investigators recognized the strong smell of marijuana emanating from the area of the 84th Ave. Property and saw that the windows were covered.  Utility record checks indicated high power consumption at the 84th Ave. Property, indicative of a marijuana growing operation.  Records checks with OLCC and OMMP indicated that the 84th Ave. Property was not a registered medical or recreational marijuana growing site under Oregon law. Public records checks showed A. LIM to be the previous owner of the duplex, and that A. LIM sold the property to HUANG in May 2017.

28. On March 12, 2018, investigators conducted surveillance in the area of 3826 SE 50th Ave., Portland, Oregon.   Investigators recognized the strong smell of marijuana emanating from area around the property and saw that the windows were all covered.   Utility record checks indicated high power consumption at the 50th Ave. Property, indicative of a

**Declaration of Cameron Wall**

marijuana growing operation.   Records checks with OLCC and OMMP indicated that the 50th Ave. Property was not a registered medical or recreational marijuana growing site under Oregon law. Public records checks showed A. LIM to be the current owner of the 50th Ave. Property.

**June 5, 2018 Search Warrants**

29. Based on the investigation to date, investigators requested and received federal search and seizure warrants to search the 84th Ave. Property and the 50th Ave. Property for evidence relating to marijuana manufacturing and distribution.

30. On June 5, 2018, investigators served the search warrants at the 84th Ave. Property and the 50th Ave. Property. Upon entry to the 84th Ave. Property, investigators found that the two sides of the duplex were joined by a door-sized opening that was cut into a common wall, allowing occupants to access both sides of the duplex. Investigators found active marijuana growing operations in rooms on both sides of the 84th Ave. Property, and other rooms which were set up to grow marijuana but were currently not operating. In summary, investigators found 255 marijuana plants, over eight kilograms of processed marijuana, one firearm, ammunition, cell phones, and several documents, ledgers, and receipts. HUANG was present during the search warrant. At the completion of the search warrant, HUANG was arrested on state charges of Child Neglect and Endangering the Welfare of a Minor, and a juvenile present at the 84th Ave. Property during the search warrant was taken into protective custody.

31. Later in the day on June 5, 2018, investigators also served a federal search warrant at the 50th Ave. Property. Investigators found a large-scale marijuana growing operation inside

**Declaration of Cameron Wall**

the property, with live plants growing in various rooms on both levels of the house. Investigators seized 572 live marijuana plants, over one kilogram of processed marijuana, and user amounts of suspected methamphetamine and cocaine. One individual was encountered inside the 50th Ave. Property and was subsequently taken into custody by Immigration and Customs Enforcement (ICE) for immigration violations.

### Items Seized from the 84th Ave. Property

32. Investigators reviewed items seized from the 84th Ave. Property pursuant to the warrants served on June 5, 2018. One of these items was a Quality Home Building Supplies (QHBS) Quotation document, which listed QHBS's address as 3255 NW Yeon Ave. QHBS is a business owned by C. LIM and A. LIM that purports to specialize in granite supplies. The document identifies "account name" and "ship to," which list the 50th Ave. Property address and HUANG's information, along with a San Francisco address and the name and phone number for a family member of HUANG's. The QHBS document lists several credits and debits in various amounts associated with rent and late fees. There are multiple credits that indicate payments to A. LIM. For example, one of the credit descriptions states, "Paid $3000.00 to Alice on 2/1/2017 for 2/2017" with a corresponding $3,000 credit. There are also multiple credit descriptions that indicate C. LIM received payment and transferred the payment to A. LIM. For example, one of the credit descriptions states, "Tung give to me $3000 on 10/2016 for 10/1/2016 to 10/31/2016 rent," with a corresponding $3,000 credit.

33. Investigators reviewed cell phones seized from HUANG during the search warrant at the 84th Ave. Property on June 5, 2018. One of the cell phones show communications between

**Declaration of Cameron Wall**

EXHIBIT A    PAGE 10
Complaint *In Rem*
FOR FORFEITURE

HUANG and C. LIM, and HUANG and C. LIM, via the cellphone application WeChat. The messages are typically in Chinese, and in particular, C. LIM sends HUANG audio messages in Cantonese. These messages are currently being translated. The communications between HUANG and A. LIM are usually in text message form, partially in English and partially in Chinese, and several messages include pictures or other attachments. For example, on August 25, 2017, A. LIM sent HUANG a picture of Portland Water Bureau bill, which had a San Francisco mailing address on it which was associated to C. LIM and A. LIM. On October 14, 2017, HUANG sent A. LIM a message stating "Hi Alice can you let your husband …know I payed for the missing rent already." On November 3, 2017, HUANG sent A. LIM a message stating, "I need a few more days in trying my hardest to get the rest of the money. I can give you 6 thousand tomorrow, but I still need a few more days to get the rest." On November 4, 2017, A. LIM sent HUANG a message stating, "Please drop by with what you got and I need to add late fee as well." On December 8, 2017, A. LIM sent HUANG a picture of a QHBS invoice billed to the 50th Ave. Property.

### Witness Statements about C. LIM and the 50th Ave. Property

34. On May 24, 2018, investigators spoke with Neighbor 1 (N1), who lives near the 50th Ave. Property. N1 provided the following information to investigators:

    a.  The owner of the 50th Ave. Property is a Chinese man named "Chung" who owns a granite business in Portland and drives a silver BMW 7-series sedan. N1 met C. LIM when N1 started mowing the lawn at the 50th Ave. Property.

**Declaration of Cameron Wall**

b. C. LIM remodeled the house approximately three years ago. There have been neighborhood complaints about the 50th Ave. Property because of trash left in the yard, overgrown grass, and the property smelling like garbage.

c. C. LIM brings people up from San Francisco, California, to stay at the 50th Ave. Property on a short-term basis. C. LIM refers to these people as relatives or potential buyers for the property. The people usually don't speak English.

d. It is common for U-haul or moving trucks/vans to show up at the 50th Ave. Property late at night, and there are up to four people who visit the property late at night. Most of the people who visit the property drive nice luxury vehicles.

**Search Warrant at QHBS/A. LIM/C. LIM Property on July 17, 2018**

35. Based on the investigation to that point, investigators secured a federal search warrant for A. LIM and C. LIM's residence and business office for QHBS at 3255 NW Yeon Ave., Portland, Oregon, which they served on July 17, 2018.

36. During the service of the warrant at QHBS, the following relevant items were found:

a. **19 Monticello Drive Evidence:**

i. Multiple QHBS invoices detailing the purchase, remodel, and utility expenses for the 19 Monticello Dr. Property;

ii. QHBS invoices detailing a $8,000 deposit and monthly $4,000 a month rent charges;

iii. QHBS invoice detailing two $4,000 rent payments to C. LIM and A. LIM;

iv. QHBS invoice showing the total rent received from 19 Monticello Drive Property in 2017 was $32,000; and,

**Declaration of Cameron Wall**

EXHIBIT A    PAGE 12
Complaint *In Rem*
FOR FORFEITURE

v. PGE, City of Lake Oswego, and NW Natural gas utility bills in the names of A. LIM, among others, for the 19 Monticello Drive Property.

b. **5635/5639 SE 84th Ave. Evidence:**

i. QHBS invoice showing that the property was sold to HUANG on May 19, 2017 for $300,000, 36 month loan at $9,000 a month loan payments (interest rate at 3%). The beginning balance of HUANG's loan from A. LIM and C. LIM was $324,000; and,

ii. The same QHBS invoice shows HUANG made nine (9) payments by check and cash totaling $99,000 on the loan for the 84th Ave. Property during 2017. According to deposit slips and cashier's check copies found with the invoice, at least $45,000 of these loan payments were deposited to a US Bank account ending in 1899 in the name of A. LIM.

c. **3826 SE 50th Ave. Evidence:**

i. A QHBS invoice showing the receipt of $4,000 for September 2017 rent (unknown payee or payor); and,

ii. Utility payments for the 50th Ave. Property in A. LIM's name.

d. **Other Relevant Evidence:**

i. Five firearms;

ii. $152,285 in U.S. currency, which was found after a K-9 unit alerted to the presence of narcotics in the closet of a break room and a bedroom closet at QHBS. The cash was found inside a coat, and concealed within other items, like clothing, envelopes, and boxes;

**Declaration of Cameron Wall**                    EXHIBIT A    PAGE 13
                                                          Complaint *In Rem*
                                                          FOR FORFEITURE

    iii.  Two computers and three phones;

    iv.  Other financial documents;

    v.  Keys labeled "84th"; and,

    vi.  Safe deposit box keys.

37. During the search warrant executed at QHBS on July 17, 2018, A. LIM was interviewed by investigators after being read *Miranda* warnings. A. LIM provided the following information in summary:

    a.  A. LIM owns houses at 19 Monticello Drive in Lake Oswego, 3826 SE 50th Ave. in Portland, and used to own the property at 5635/5639 SE 84th Ave. in Portland, before selling it to Damon HUANG.

    b.  A. LIM has been to the 19 Monticello Dr. Property to collect rent from the tenant there. The tenant paid A. LIM $4,000 a month in rent for the house, and the electric bill for the property was approximately $2,000 a month.

    c.  A. LIM never went to the 50th Ave. Property after renting it out to the current renter. HUANG pays A. LIM $3,000 a month in rent for the 50th Ave. Property, which he pays in cash to A. LIM at QHBS.

    d.  A. LIM sold the 84th Ave. Property to HUANG for $460,000 and HUANG was supposed to pay her $9,000 a month for 36 months. HUANG made the $9,000 a month loan payments for the 84th Ave. Property to A. LIM in cash at QHBS. A. LIM was surprised that HUANG paid her all in cash, but she was just happy to be paid.

**Declaration of Cameron Wall**

e.  A. LIM deposited the rents from the 19 Monticello Dr. Property, the 50th Ave. Property, and the loan payment for the 84th Ave. Property into her accounts at U.S. Bank. A. LIM also put some of the cash rent payments into her safe deposit box at U.S. Bank.

f.  A. LIM was surprised by the amount of cash investigators found at QHBS during the search warrant (investigators found $152,285 in U.S. currency at QHBS, see above.)

g.  When C. LIM goes to China to purchase granite supplies, he takes cash with him to make the purchases.

h.  All the cash found at QHBS is from house rental & loan payments. A. LIM and C. LIM's granite business only deals in checks and credit cards, not cash.

i.  A. LIM doesn't know anything about marijuana growing operations at her rental houses or at the 84th Ave. Property.

j.  A. LIM uses the QHBS Quickbooks software to keep track of all rental payments for the 19 Monticello Dr., 50th Ave., and 84th Ave. payments.

38. During the search warrant executed at QHBS on July 17, 2018, C. LIM was interviewed by investigators after being read *Miranda* warnings. C. LIM provided the following information in summary:

a.  C. LIM knows that the 19 Monticello Dr. Property, the 50th Ave. Residence, and the 84th Ave. Property were used to grow marijuana. C. LIM knows that the tenant at 19 Monticello Drive Property operated a marijuana growing operation there and C. LIM is mad at him/her for being late on rent.

**Declaration of Cameron Wall**                    EXHIBIT A    PAGE 15
                                                   Complaint *In Rem*
                                                   FOR FORFEITURE

b.  C. LIM and A. LIM sold the 84th Ave. Property to an acquaintance. That acquaintance rented the 84th Ave. Property and later purchased it so that his/her family member, Damon HUANG, could grow marijuana at the property.

c.  C. LIM collects $4,000 a month for rent for the 19 Monticello Dr. Property, $3,000 a month for rent for the 50th Ave. Property, and collected $2,000 a month for the 84th Ave. Property, before selling it to Diane. C. LIM now collects $9,000 a month on the loan for the 84th Ave. Property.

d.  Prior to purchasing the 84th Ave. Property, the same acquaintance referenced above travelled from San Francisco, California to Portland and paid C. LIM two or three months of the loan payment in cash. It was the acquaintance's idea for him/her to buy the 84th Ave. Property, not C. LIM's.

e.  Marijuana has been growing in the 19 Monticello Dr. Property since October 2017.

f.  Marijuana has been growing in the 50th Ave. Property since early 2017. C. LIM went there once to collect rent and the renters let him in to check out the marijuana grow inside the property, and that is how C. LIM found out they were growing marijuana there.

g.  C. LIM last saw marijuana being grown at the 84th Ave. Property when he sold the house.

h.  It is legal to grow marijuana in Oregon if you have a license. C. LIM does not have a license to grow marijuana. C. LIM rented his houses to people in order for them to grow marijuana in the houses.

**Declaration of Cameron Wall**

EXHIBIT A    PAGE 16
Complaint *In Rem*
FOR FORFEITURE

i.   C. LIM was last at the 19 Monticello Dr. Property a few days before the QHBS search warrant. C. LIM last saw marijuana plants at the 19 Monticello Dr. Property in January or February 2018, when he went by the house and met someone there who spoke Mandarin, but C. LIM didn't know the person. C. LIM was last at the 50th Ave. Property a few days before the QHBS search warrant, when he went by and told the current tenants to fix the house up. C. LIM also mowed the lawn at the house.

j.   There may be a couple thousand dollars in cash around QHBS, most likely in drawers.

k.   The rent money C. LIM collects in cash from the 19 Monticello Dr. Property, the 50th Ave. Property, and the 84th Ave. Property is either deposited into his bank accounts or C. LIM spends it. C. LIM reports all of the rental income on his taxes.

l.   C. LIM has seen marijuana being grown at a property at 9015 SE Victor Lane in Portland. The house is owned by C. LIM's friend, Man Li, and someone rents the house from Li to grow marijuana at it.

**Discovery of U.S. Bank Safe Deposit Boxes**

39. Based on the discovery of safe deposit box keys at QHBS and A. LIM's statements about putting cash from the 19 Monticello Dr. Property, the 50th Ave. Property, and the 84th Ave. Property into her safe deposit boxes at U.S. Bank, investigators used a K-9 unit inside the safe deposit box room at the bank branch, and the K-9 alerted to the presence of narcotics in the area of safe deposit boxes 212 and 815, the two safe deposit boxes in A. LIM's name.

40. Based on the statements from A. LIM and the K-9 alert on the safe deposit boxes, investigators secured federal search warrants on July 17, 2018, (the same day as the search warrant at the QHBS office and the LIM's residence) for safe deposit boxes 212 and 815. Before the service of the search warrants on the safe deposit boxes, investigators received a phone call from the U.S. bank branch, stating that A. LIM was at the branch, attempting to access her safe deposit boxes and drain her bank accounts. Investigators went to the branch and spoke with A. LIM. A. LIM was carrying a large duffle bag and sitting in a chair in the lobby.

41. A. LIM told investigators she was attempting to access her safe deposit boxes in order to get the vehicle title to a truck. When asked about the duffle bag, A. LIM told investigators the bag was to put the title into. Investigators asked A. LIM for the safe deposit box keys, which she gave to them and left.

### Seizure of Cash from Safe Deposit Boxes and Bank Account Balances

42. Later on the same day, July 17, 2018, investigators executed the two federal search warrants on A. LIM's safe deposit boxes. Investigators found the following inside the two boxes:

    a.  Approximately $2,256,670 in U.S. currency;

    b.  Approximately $1,931 (in U.S. currency value) of Chinese currency; and,

    c.  Handwritten ledgers indicating the balance of currency in the safe deposit boxes, and dates and amounts of currency deposits into the boxes.

**Declaration of Cameron Wall**
                                                 EXHIBIT A   PAGE 18
                                                    Complaint *In Rem*
                                                    FOR FORFEITURE

43. On the following date, July 18, 2018, investigators also secured federal search warrants for the U.S. Bank accounts associated to C. LIM, A. LIM, and QHBS, and seized approximately $1,632,251 from the accounts.

### Interview with U.S. Bank Branch Manager

44. On July 17 and July 19, 2018, investigators interviewed Bank Employee 1 (BE1) the U.S. Bank branch manager, who provided the following information in summary:

    a. BE1 received a phone call on July 17, 2018, from U.S. Bank security control, stating that federal agents would be executing federal search warrants on accounts and safe deposit boxes associated with A. LIM.

    b. Later on July 17, A. LIM showed up at the U.S. Bank branch and seemed to be in a hurried panic. A. LIM demanded access to her safe deposit boxes and asked about obtaining cashier's checks, made out to her (A. LIM), for the balance of all of her accounts, less $300.00. A. LIM told BE1 she needed the money to buy a house. A. LIM yelled repeatedly, "I need it now!"

    c. On July 18, 2018, a teller at a U.S. Bank branch in Tualatin, Oregon called BE1 and told her an individual named Raymond was attempting to cash a payroll check from QHBS for over $2,000. BE1 told the teller not to release any of the funds because of the ongoing investigation. BE1 then received a phone call from Deanna LIM, A. LIM's daughter. Deanna asked BE1 to release the funds, and she asked BE1 if A. LIM knew why the funds were not being released. Another individual claiming to be A. LIM then got on the phone with BE1, and made a similar request. BE1 had dealt with A. LIM multiple times in person and knows the sound of A. LIM's voice.

**Declaration of Cameron Wall**                                        EXHIBIT A    PAGE 19
                                                                       Complaint *In Rem*
                                                                       FOR FORFEITURE

BE1 knew this person was not A. LIM and she told this individual that the check would not be cashed and that if she had questions about it, to come to the U.S. Bank branch and speak with BE1 in person. The person claiming to be A. LIM then screamed several times, "I'm coming to see you!"

d.  BE1 received phone calls from five U.S. Bank tellers at different branches in the Portland Metro area, informing her that people were trying to cash payroll checks on business bank accounts associated to A. LIM.

e.  BE1 also provided historical information about A. LIM and her interactions at U.S. Bank. A. LIM used to come into BE1's U.S. Bank branch nearly every day and exchange $20 bills for $100 bills. A. LIM always seemed very frantic during these transactions and would indicate she was in a hurry. A. LIM stopped this currency exchange behavior in January 2018, when U.S. Bank's policy regarding currency transactions changed. Prior to January 2018, customers could exchange cash without it going through their bank account. After January 2018, customers were required to deposit the cash into their bank account and withdraw currency from their account, thereby creating a trail to document the transaction.

f.  A. LIM also visited the branch frequently to send international wire transfers around the "cut-off" or closing time of the branch. A. LIM always seemed frantic and would say that the wire transfer had to happen "today."

g.  A. LIM was the only U.S. Bank branch customer BE1 could remember that used the enclosed "viewing room" for safe deposit box visits, which allows for some privacy when accessing the safe deposit boxes. In January 2018, A. LIM accessed

**Declaration of Cameron Wall**                    EXHIBIT A    PAGE 20
                                                   Complaint *In Rem*
                                                   FOR FORFEITURE

her safe deposit boxes and was in the viewing room for approximately 45 minutes. Other U.S. Bank branch employees had observed A. LIM enter the bank branch with bags and subsequently access her safe deposit boxes.

### Purchase & Funding of 19 Monticello Drive Property

45. According to a review of public property records, title records, and bank records, C. LIM and A. LIM purchased 19 Monticello Drive, Lake Oswego, Oregon, 97035 for approximately $450,500 on April 21, 2015. A. LIM and C. LIM paid $25,000 in three earnest money checks and $66,146.75 in a cashier's check to close (totaling $91,146.75 in money down). A. LIM and C. LIM financed the balance ($359,648.92) through a mortgage on the property with U.S. Bank. The three earnest money checks were written on U.S. Bank account ending in 8680, in the name of C. LIM and A. LIM. This account is funded by payroll checks from QHBS & Ming Fa Supplies (another company owned by A. LIM & C. LIM) and large checks from other individuals from California. At this point in the investigation, investigators do not know what account funded the purchase of the $66,146.75 cashier's check to fund the property.

46. From the period September 2015 to July 2018, A. LIM and C. LIM made approximately $114,530 in mortgage payments on the 19 Monticello Dr. Property from U.S. Bank account ending in 8680. This account was funded by A. LIM and C. LIM's payroll checks & direct deposits and large checks from individuals in California.

### Purchase & Funding of 84th Ave. Property

47. A. LIM sold the 84th Ave. Property to HUANG on or about May 18, 2017, for $300,000. A. LIM self-financed HUANG's loan on the 84th Ave, Property, which required monthly

$9,000 payments for 36 months. According to QHBS records, HUANG paid A. LIM at least $99,000 in cash and checks on the loan in 2017.

## Purchase & Funding of the 50th Ave. Property

48. A. LIM purchased the 50th Ave. Property on or about October 10, 2013, from the previous owner. According to the statutory warranty deed filed on October 11, 2013, the house was transferred to A. LIM for $0.00.

49. Records from Realty Trust Group/Windermere indicated the 50th Ave. Property was sold for approximately $235,000 in October 2013.

50. The property taxes for the 50th Ave. Property for 2017-2018, as well as garbage, natural gas, and electricity bills, were paid for by A. LIM using US. Bank account ending in 8680. This account was funded by A. LIM and C. LIM's payroll checks & direct deposits and large checks from individuals in California.

## Conclusion

51. In conclusion, the evidence in this declaration provides probable cause to believe that the 19 Monticello Dr. Property, the 50th Ave. Property, and the 84th Ave. Property were used to promote a scheme to illegally produce and distribute marijuana, in violation Title 21, United States Code sections 841, 846, and 856. The **Defendant Real Properties** are therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(7).

52. I have presented this declaration to Assistant United States Attorneys William M. Narus

and Katherine C. de Villiers, who have advised me that, in their opinions, the proposed

complaint is supported by probable cause.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28

U.S.C. §1746.

Executed this 28th day of August 2018.


      *s/ Cameron Wall*
CAMERON WALL
Special Agent
IRS-Criminal Investigation


**Declaration of Cameron Wall**         EXHIBIT A   PAGE 23
Complaint *In Rem*
FOR FORFEITURE

℘ JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 2  U.S. Government
       Defendant

☐ 3  Federal Question
       (U.S. Government Not a Party)

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                           and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):      JUDGE _____      DOCKET NUMBER _____

DATE _____      SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____      AMOUNT _____      APPLYING IFP _____      JUDGE _____      MAG. JUDGE _____